**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 31, 2013

Lyle W. Cayce
Clerk

No. 12-41162

In the Matter of:  ENERGYTEC, INCORPORATED,

Debtor

------------------------------------------------------------------------------

NEWCO ENERGY,

Appellant

v.

ENERGYTEC, INCORPORATED; RED WATER RESOURCES,
INCORPORATED,

Appellees

Appeal from the United States District Court
for the Eastern District of Texas

Before DENNIS, CLEMENT, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

Energytec, Inc. owns and operates gas pipelines.  In 2009, the company filed a voluntary petition for bankruptcy relief under Chapter 11.  The bankruptcy court authorized a sale of a pipeline system to Red Water Resources, Inc., but reserved for later determination whether the sale was free and clear of Newco Energy's right to certain fees and other interests in the pipeline.  Over a year after the sale, the bankruptcy court ruled that Newco's rights were not

No. 12-41162

covenants running with the land and that the sale of the pipeline system was free and clear of Newco's interests. The district court affirmed, and Newco appealed. We VACATE and REMAND.

## FACTS AND PROCEDURAL HISTORY

Newco's interest in a transportation fee from Energytec's pipeline arises out of agreements made with Energytec's predecessor, Mescalaro Oil & Gas, Inc. In 1999, Mescalaro as seller and Rockwell Marketing Corporation and Producers Pipeline Corporation as buyers entered into a letter agreement. Mescalaro conveyed all its interest in a gas pipeline, its rights-of-way, and a processing plant to Producers. Other assets were conveyed to Rockwell. Newco was also a party to the agreement. In its brief to this court, Newco calls itself an "affiliate" of Mescalaro. We are pointed to no record evidence further explaining the relationship.

In language relevant to our later discussion of arguments about privity, the agreement says this about Newco:

> Mescalaro has reached agreement to convey certain interests in the properties which are the subject of this Agreement to Newco Energy, Inc. ("Newco"). Newco, as successor in interest to Mescalaro therefore joins in the execution of this Agreement and Mescalaro shall reserve for the benefit of Newco the acquired interests.

As partial consideration for the conveyance of the pipeline system, Producers was required to pay Newco a "transportation fee" based on the amount of gas flowing through the pipeline. The agreement gave Newco a security interest and lien on the entire pipeline system to secure payment of the transportation fee. Producers was required to obtain Newco's consent prior to any assignment of its interest in the pipeline. The agreement specified that Newco's interest in transportation fees was to "run with the land." A separate Assignment and Bill of Sale of the same date conveyed the pipeline system and

2

No. 12-41162

other property.   There, Mescalaro conveyed the interests "subject to the Transportation Fee and other terms and provisions" of the letter agreement.

A dispute soon arose regarding the payment of transportation fees, resulting in Newco's suing Producers in 2002.  The suit was settled in 2005 when Energytec agreed to purchase the pipeline system from Producers.  As part of the purchase agreement, Energytec expressly agreed to assume the obligation to pay transportation fees to Newco.  In May 2009, Energytec filed for bankruptcy. It paid the transportation fees until December 2009.

An auction of a substantial portion of the debtor's assets, including the pipeline system, was held in January 2010.  Red Water (then known as Red River Resources, Inc.) was the highest and best bidder.  Energytec moved for the bankruptcy court's approval of the sale to Red Water.  The motion requested that the sale be free and clear of any liens, claims, or encumbrances, with exceptions not relevant here.  Newco objected, arguing that its interest in transportation fees and its right to consent to any assignment ran with the land and, therefore, the pipeline could not be sold free and clear of those interests.  On February 23, 2010, the court approved the sale of the pipeline to Red Water, reserving Newco's objection to the sale for later determination by the court.  The sale actually occurred on April 14, 2010.

In May 2011, Newco moved to resolve the issue of whether the sale was free and clear of its claims.  After a July hearing on the motion, the bankruptcy court ruled at a hearing in August that the transportation fee was not a covenant running with the land.  Consequently, the sale to Red Water was free and clear of Newco's claims.  The court entered a brief written order to the same effect on September 2, 2011. The court did not address Newco's right to consent to assignment of the pipeline.  The district court affirmed.  It mentioned the right to consent to assignment only in passing and held that the right was not a property interest analogous to a royalty payment.

3

No. 12-41162

Newco timely appealed to this court.  It argues that the sale should not have been free and clear of its transportation fee and other rights, which Newco argues were covenants running with the land.  The debtor Energytec and Red Water have filed a joint brief as appellees.[1]

## DISCUSSION

"The Court of Appeals reviews the decision of a district court, sitting as an appellate court, by applying the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court." *Carrieri v. Jobs.com Inc.,* 393 F.3d 508, 517 (5th Cir. 2004).  Because this appeal is based on the bankruptcy court's application of law to undisputed facts, the *de novo* standard of review applies.  *See id.*

### I.  Is the Appeal Moot for Failure to Obtain a Stay?

Energytec argues that Newco's failure to stay the order authorizing the sale of the pipeline to Red Water moots its appeal and deprives this court of jurisdiction.  Energytec relies on this statute:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).  It "patently protects, from later modification on appeal, an authorized sale where the purchaser acted in good faith and the sale was not stayed pending appeal." *Gilchrist v. Westscott (In re Gilchrist)*, 891 F.2d 559, 560 (5th Cir. 1990).  The section "codifies Congress's strong preference for finality

---

[1] For purposes of this opinion we will refer, except where otherwise noted, to the appellees collectively as "Energytec."

and efficiency in the bankruptcy context, particularly where third parties are involved." *Hazelbaker v. Hope Gas, Inc. (In re Rare Earth Minerals)*, 445 F.3d 359, 363 (4th Cir. 2006); *see also Hardage v. Herring Nat'l Bank (In re Hardage)*, 837 F.2d 1319, 1323 n.3 (5th Cir. 1988) (recognizing the policy of finality expressed by Section 363(m)).  By providing good faith purchasers with a final order and removing the risks of endless litigation over ownership, Section 363(m) "allows bidders to offer fair value for estate property[,]" which "greatly benefits both the debtor and its creditors." *In re Rare Earth Minerals*, 445 F.3d at 363.

Newco argues that it is not trying to set aside the sale to Red Water.  Its challenge is not to the sale but to the bankruptcy court's declaration, more than a year after the sale, that Newco's transportation fee could be terminated because it was not a covenant running with the land.

Energytec responds that this circuit is one of the most "unequivocal" and "steadfast" in requiring that a stay be entered, citing *In re Gilchrist* and a few other cases.  Regardless of how much zeal we have displayed, what we are protecting is the "later modification on appeal" of authorized sales. *In re Gilchrist*, 891 F.2d at 560.  The April 2010 sale was subject to the contingency of Newco's unresolved claims.  Newco is not trying to modify the contingency of that sale; it is relying on it.  In August 2001, 16 months after the sale, Red Water learned that the bankruptcy court believed the assets should be free and clear of Newco's claims.  The sale, though, had occurred without that protection.

It is true that Red Water's bid contained a statement that the purchase should be free and clear of encumbrances.  Yet after Newco's objection, the sale was approved in February 2010 still subject to the encumbrance.[2]  No part of the

---

[2]  The bankruptcy court's February 23, 2010 order provided:

[T]he sale shall be free and clear of all liens, claims, interests and

No. 12-41162

lengthy bankruptcy court record designated for appeal reveals an objection by Red Water to closing on the sale. In its bid, Red Water reserved the right to terminate its offer or re-bid if the debtor decided not to sell all described assets. There is no evidence after the bankruptcy court approved the sale without providing that it would be free and clear of Newco's claim, that Red Water tried to alter the sales price, withdraw, or otherwise react to the fact that the sale would be subject to the Newco claim. Red Water decided to proceed in the face of whatever legal and financial risks it perceived.[3]

This circuit has yet to address issues similar to what are raised here. Section 363(m) has been held to apply when the challenged provision is "integral to the sale" of the debtor's assets, which occurs "if the provision is so closely linked to the agreement governing the sale that modifying or reversing the provision would adversely alter the parties' bargained-for exchange." *In re Trism, Inc.,* 328 F.3d 1003, 1007 (8th Cir. 2003).

The Second Circuit discussed Section 363(m) in an appeal by a losing bidder at the auction of the debtor's assets, who had not obtained a stay.

---

encumbrances, with any valid liens, claims, interests or encumbrances to attach to the proceeds of [the] sale to the extent set forth below, *except* for those liens granted to Red [Water] pursuant to that certain Final Order Authorizing Debtors to Enter into Post Petition Financing Agreement entered on June 25, 2009 and as further set forth herein below, *and including without limitation the rights, interests and lien rights claimed by Newco in certain obligations to pay transportation charges or fees asserted in connection with the Redwater Pipeline System, including but not limited to the right to consent to the assignment of all or any part of the Redwater Pipeline System, pending later determination* as set forth below.

(emphasis added). The appellees do not dispute that the lengthy reference to the Newco claim is an exception to the free and clear provision.

[3] Red Water's January 2010 bid on all the relevant assets was for over $3 million. At a June 2011 hearing, an attorney for Red Water estimated that from commencement of the bankruptcy in May 2009 until the sale occurred in April 2010, about $9,000 in transportation fees would have been earned. Newco did not indicate whether it agreed. If true, then about $10,000 in transportation fees were being earned annually at that time.

*WestPoint Stevens, Inc. v. Aretex LLC (In re WestPoint Stevens, Inc.)*, 600 F.3d 231, 247-54 (2d Cir. 2010). The losing bidder argued that a stay was unnecessary because it did not seek to reverse the sale order and was only challenging the provisions related to the release of certain liens and claims and the distribution of securities. *Id.* at 247. The court rejected this argument, finding that the purchaser would not have consummated the sale without assurance that it was acquiring control of the debtor's business, and the provisions for lien release, claims satisfaction, and distribution were essential to acquisition of control. *Id.* at 250-51. Where a challenged provision is integral to the sale, the court held it had no jurisdiction to review an unstayed order once the sale occurs, except on the limited issue of whether the sale was made to a good faith purchaser. *Id.* at 250-51. Here, though, Red Water *did* agree to consummate the sale despite that the validity of Newco's claims remained to be decided, suggesting that "free and clear" was not integral to the sale.

Much closer to the facts presented here is a case in which the Tenth Circuit held that Section 363(m) did not apply. *Paige v. Jubber (In re Paige)*, 685 F.3d 1160, 1191 (10th Cir. 2012). There, the trustee instituted an adversary proceeding to recover an internet domain name previously owned by the debtor that had been purchased by Search Market Direct, Inc. ("SMDI") shortly after the debtor filed for bankruptcy. *Id.* at 1164-65. The bankruptcy court later approved a sale order under which a third party, ConsumerInfo.com, agreed to pay the estate's creditors and litigate the adversary proceeding in exchange for the estate's promise that it would be given the domain name if recovered. *Id.* at 1165. SMDI sought a stay of the sale order but did not receive one. *Id.* at 1190. On appeal, ConsumerInfo argued that Section 363(m) applied and SMDI's appeal of the sale order was moot. *Id.* The court disagreed, noting that although the sale order authorized the sale of the domain name free and

clear of all interests, it expressly reserved SMDI's defenses to the adversary proceeding, pending a final ruling by the bankruptcy court. *Id.* ConsumerInfo chose to move forward with the closing of the sale without a final order ruling on SMDI's defenses. *Id.* at 1191. By doing so, the court reasoned, "ConsumerInfo accepted the risk that SMDI could still prevail on the defenses it retained under the Sale Order" and Section 363(m) did not strip it of those defenses. *Id.*

Similar to the sale order in *Paige*, the bankruptcy court's order here that approved the sale in February 2010, reserved Newco's interests pending a final order. Red Water went forward with the sale, accepting the risk that Newco's interests would survive. Of course, the February 2010 "authorization" and the April 2010 "sale or lease," to use the terms of Section 363(m), could not be stayed in August 2011. Red Water gained possession of the pipeline long before the bankruptcy court's 2011 order. Red Water could be arguing that Newco should have sought a stay earlier – at the time the sale was being consummated in April 2010. Such a stay would have vitiated the purpose of the February order allowing the sale to go forward with Newco's claims remaining a contingent interest. Further, what would have been stayed in April 2010 was not a sale free and clear of Newco's claims, but a sale *not* free and clear of those claims. Instead of a stay by the claimant, Red Water could have declined to go forward with the sale under such terms – or at least objected and had the bankruptcy court resolve whether the bid could be altered.

Refusing to apply Section 363(m) under these circumstances is not contrary to the policy of providing innocent third parties with a reliable final order. Requiring a stay before we can review a decision entered a year after a sale that was not originally free and clear of a particular claim does not follow from the text of Section 363(m) nor satisfy its purposes. We have jurisdiction to consider the bankruptcy court's August 2011 decision on Newco's claims.

No. 12-41162

*II. Are Newco's Interests Covenants Running with the Land?*

Newco argues that its right to transportation fees and its right to consent to the assignment of the pipeline constitute covenants running with the land.

Texas caselaw contains some variations on the requirements for a covenant that runs with the land. We accept the following as a controlling explanation: "a covenant runs with the land when it [1] touches and concerns the land; [2] relates to a thing in existence or specifically binds the parties and their assigns; [3] is intended by the original parties to run with the land; and [4] when the successor to the burden has notice." *Inwood N. Homeowners' Ass'n, Inc. v. Harris*, 736 S.W.2d 632, 635 (Tex. 1987). The Court also referred to a requirement of privity but did not detail it. *Id.* An intermediate court relied on *Inwood*'s discussion of covenants and said this about privity: "There must also be privity of estate between the parties when the covenant was made." *Ehler v. B.T. Suppenas Ltd*, 74 S.W.3d 515, 521 (Tex. App. – Amarillo 2002) (citation omitted). Newco contends that the elements are met in this case.[4]

Three factors are uncontested. The letter agreement executed by Newco and Producers in 1999 stated an intent that Newco's interests in the pipeline run with the land. The agreement also reflected the intent to bind Newco and Producers, as well as their assigns, and burden a thing in existence – the pipeline. When Energytec agreed to purchase the pipeline from Producers, it

---

[4] Energytec argues that Newco has failed to preserve the issue of whether its right to consent to an assignment runs with the land. Energytec points to the bankruptcy court's bench order authorizing the sale free and clear of Newco's interests, which did not mention the right to consent to assignment and refers only to Newco's right to transportation fees. Our review of the record reveals that Newco raised its right to consent to assignments before the bankruptcy court in its objections to Energytec's motion for authorization to sell the pipeline and that right was preserved in the court's initial order authorizing the sale. Newco also asserted its right to consent to assignments in its briefing before the district court, and the court addressed the right to consent, although only briefly, in its order. The issue has been adequately preserved for review by this court.

also expressly agreed to honor Newco's interests in the pipeline, so there is no question that Energytec had notice. What are left is the touch-and-concern factor and whether there was privity. We address privity first.

The transportation fee and Newco's other interests were created in the 1999 letter agreement. Mescalaro owned the entirety of the interests in the pipeline prior to entering into the letter agreement. The agreement describes Newco as the "successor in interest to Mescalaro," but there is no elaboration about that. Newco "therefore joins in the execution of this Agreement and Mescalaro shall reserve for the benefit of Newco the acquired interests." The letter agreement contains an assignment of the rights-of-way and pipeline system to Energytec's predecessor, Producers. It also contained this provision, which is the source of Newco's primary claim:

> Producers shall pay NEWCO, or its designee, as successor in interest to Mescalaro, a Transportation Fee equal to Ten Cents ($0.10) per MCF for gas volumes transported through the System from the seven natural gas wells [thereafter described], and Twenty Cents ($0.20) per MCF for gas volumes transported though the pipeline from any and all wells which may be connected to the System hereafter.

The clear language of the letter agreement meant that Mescalaro was reserving for Newco's benefit certain interests out of the assignment to Producers. Energytec argues that the relevant privity is absent.

We start by identifying the privity issues that arise in defining covenants that run with the land. The burden of the covenant is on the owner of the pipeline and accompanying right-of-way. Privity has been met as to the succession of ownership of the burdened property: Mescalaro conveyed to Producers, who conveyed to Energytec, who through bankruptcy conveyed to Red Water. Newco is either the original owner of the benefit of the covenant or succeeded to it through some arrangement with Mescalaro, a point left unclear

No. 12-41162

in the 1999 letter agreement which referred to Newco as Mescalaro's "successor in interest." These successive relationships are at times categorized as "vertical privity." 9 RICHARD R. POWELL, POWELL ON REAL PROPERTY § 60.04[3][c][iv] (2010). The privity that is allegedly missing here has been called "horizontal privity," which is the relationship between the original parties to the covenant. *Id.* § 60.04[3][c][iii]. For those jurisdictions requiring horizontal privity, there must be "simultaneous existing interests" or "mutual privity" between the original parties as either landlord and tenant or grantor and grantee. *Id.* § 60.04[3][c][ii]-[iii].

Energytec relies strongly on a Texas case addressing horizontal privity, though the opinion does not use that label. *Wayne Harwell Props. v. Pan Am. Logistics Ctr., Inc.*, 945 S.W.2d 216, 218 (Tex. App. – San Antonio 1997, writ denied)). A Restatement describes *Wayne Harwell* as one of a minority of modern cases requiring horizontal privity. RESTATEMENT (THIRD) OF PROP.: SERVITUDES §2.4 (2000). It is a much-criticized doctrine that has been explicitly rejected by this latest Restatement. *Id.* The principal rationale for the doctrine was so "that most covenants intended to run with the land will be created in conveyances." *Id.* We must also be wary because the cited decision is not one from the Texas Supreme Court. We are guided but not controlled by that decision when interpreting Texas law. *Transcont'l Gas Pipe Line Corp. v. Transp. Ins. Co.*, 953 F.2d 985, 988 (5th Cir. 1992).

Energytec asserts that the facts of *Wayne Harwell* are "remarkably similar" to those here. There are at least some similarities that we will remark upon. An owner of land entered into an agreement with a developer. *Wayne Harwell*, 945 S.W.2d at 217. The landowner, desiring to develop his property, gave the developer Harwell a "right of first refusal to be general contractor on any improvements to the land, as well as a 20-year assignment of 15 percent of 'net cash flow interest' from the land to Harwell." *Id.* The land was conveyed,

11

but the new owners argued they had no obligation to recognize Harwell's claimed rights. *Id.* The issue was whether the developer's rights were covenants that either ran with the land or at least were binding on later owners. *Id.*

The court held there was no privity of estate between the developer Harwell and the land owner, meaning no conveyance of a real property interest created the rights. *Id.* at 218. Further, Harwell owned no land benefitted by his rights, making the rights personal and not binding on successors:

> If no privity of estate existed between the original parties, it must be shown that the restriction is imposed for the benefit of adjacent land; absent this showing, the covenant will be construed as a personal covenant with the grantor.

> It is undisputed that Harwell does not own land that would be benefitted by the restrictions on the . . . property; therefore, absent privity of estate between the parties, we cannot find this to be an equitable servitude.

*Id.* (citations omitted). The beneficiary of these rights was simply a developer who contracted to work with the landowner. *Id.* Consequently, the court held that his interest did not run with the land. *Id.*

The alleged remarkable similarity of facts between the present case and *Wayne Harwell* requires equating Mescalaro to the landowner and Newco to the developer. In the facts of the Texas court decision, no property was conveyed at the time of creating the developer's rights. Quite differently, here the transportation fee and other benefits for Newco were created at the time of a conveyance of real property. Mescalaro in the letter agreement and in the assignment and bill of sale conveyed the pipeline and rights-of-way and carved out of that conveyance the rights at issue in this appeal. All these documents were recorded in the land records of the relevant county. Had Mescalaro retained the transportation fee for itself when it conveyed the pipeline and other real property interests to Producers, there would be no question about privity.

Mescalaro and Producers were in horizontal privity, and a later assignment by Mescalaro to Newco satisfies vertical privity. The slightly different manner in which the 1999 letter agreement carved out the transportation fee and conveyed interests in the pipeline property to two different grantees is not meaningfully distinguishable. The letter agreement states that "Mescalaro has reached agreement to *convey certain interests* in the properties" to Newco. The conveyance to Newco was in the same instrument as the conveyances to other parties, but we perceive no meaningful effect on the privity concerns. Moreover, the fact that the documents creating the rights were recorded satisfies the Restatement's perception of the rationale for the privity requirement.

We conclude that if horizontal privity is a requirement of Texas law in determining whether a covenant runs with the land, it was satisfied.

The remaining question is whether the interest touches and concerns real property. Newco relies on *Westland Oil Development Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903 (Tex. 1982). There, the Texas Supreme Court considered whether an agreement to convey interests in oil and gas leases ran with the land. *Id.* at 905. The court acknowledged that the tests for making this determination were "far from absolute." *Id.* at 911. One test considers whether the covenant "affected the nature, quality or value of the thing demised, independently of collateral circumstances, or if it affected the mode of enjoying it." *Id.* (quotations omitted). The other test mentioned by the court also takes into account the covenant's impact on the property's value:

> If the promisor's legal relations in respect to the land in question are lessened – his legal interest as owner rendered less valuable by the promise – the burden of the covenant touches or concerns that land; if the promisee's legal relations in respect to that land are increased – his legal interest as owner rendered more value by the promise – the benefit of the covenant touches or concerns the land.

No. 12-41162

*Id.* The court held that because the promise to convey interests in oil and gas leases burdened the land, potentially rendering it less valuable, it constituted a covenant running with the land. *Id.*

Newco argues that the obligation to pay transportation costs burdens the land and makes it less valuable. Among the reasons is that it is secured by a lien on the entire pipeline; failure to pay the fee would result in loss of ownership and use of the pipeline through foreclosure. Newco contends that its right to consent to assignment of the pipeline also affects the nature, quality, and value of the pipeline system and rightly constitutes a covenant running with the land.

Energytec relies on *El Paso Refinery, LP v. TRMI Holdings, Inc. (In re El Paso Refinery, LP)*, 302 F.3d 343 (5th Cir. 2002). This court considered whether a covenant preventing subsequent owners of an oil refinery from seeking contribution from the original owner for environmental contamination was a covenant running with the land. *Id.* at 346. As in this case, the only disputed factor concerned whether the covenant touched or concerned the land. *Id.* at 356. We held that a covenant allocating liability for environmental costs did not touch or concern the land. *Id.* The court explained that any benefit created by the provision affected only the original owner and had "no direct impact upon the land itself." *Id.* Further, the covenant did not compel or preclude subsequent owners from doing anything on the land itself. *Id.* at 356-57. The court characterized the environmental-liability provision as a "cost-shifting mechanism" that was "more analogous to an obligation to assume an encumbrance." *Id.* at 357. "Under Texas law, a covenant to pay an encumbrance does not run with the land." *Id.*

We also rejected an argument that if a covenant affects the value of the land it necessarily runs with the land. *Id.* The court explained that more was

14

required under Texas law and that "even when a covenant impacts the value of land, it must still affect the owner's interest in the property or its use in order to be a real covenant." *Id.* Employing this language, Energytec maintains that the obligation to pay transportation costs is unrelated to the use of the land because it is based solely on the volume of gas moving through the pipeline and has no direct impact on the land.

We disagree. The real property at issue here is a gas pipeline system and the rights-of-way required for its placement. Newco's interest in transportation fees is for the use of real property, i.e., the traveling of natural gas from a starting point along the length of the pipeline to an endpoint. The pipeline is a subsurface road for natural gas, and a fee for the use of that road was retained by Mescalaro and assigned to Newco. Another restriction on use is that the pipeline cannot be assigned without Newco's consent. These rights impact the owner's interest in the pipeline. Furthermore, as burdens on the property, they also impact the pipeline's value in the eyes of prospective buyers. Indeed, the impact on the sale in bankruptcy has been clear, though the financial impact has not been quantified.

Energytec argues that Newco's transportation fee can easily (if not cheaply) be circumvented by constructing another pipeline on different property and abandoning the use of the original pipeline. Consequently, Energytec argues the transportation fee "does not compel nor preclude the promisor or any subsequent owner from doing anything on the land itself." *El Paso*, 302 F.3d at 356-57. That is not so. Whenever the owner of the "land," i.e., the pipeline and the rights-of-way, wants to transport natural gas along its length, the fee to Newco is to be paid. If the "land" owner decides no longer to do so, then Newco's rights are dormant, subject to revival should the natural gas ever again flow. The possibility that covenants will expire by the force of events is no

15

definitional obstacle to calling them covenants running with the land. Similarly, the overriding royalty interest on production from certain wells that also was created in the letter agreement presumably ends when production ceases and the oil and gas leases, on which the royalty depends, expire. But that does not mean that so long as there is relevant production, that the royalty is not binding on successors to the leases.

Newco's right to transportation fees and its right to consent to assignment are covenants running with the land. The district court erred.

### III. May Newco be Compelled to Accept Money Satisfaction of its Interests?

Energytec maintains that even if we find that Newco's interests in the pipeline run with the land, the pipeline may still be sold free and clear of those interests by virtue of this statute:

> The trustee may sell property . . . free and clear of any interest in such property of an entity other than the estate, only if . . . such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f)(5). The applicability of Section 363(f)(5) was raised in the bankruptcy court but not resolved. Both that court and the district court determined that Newco's interests were not covenants running with the land, mooting the relevance of Section 363(f)(5).

Newco contends that the monetary value of its right to future transportation fees is impossible to estimate. Under the letter agreement, Newco's fees are tied to wells identified in the agreement and any future wells that may be connected to the pipeline. According to Newco, because there is no way to predict the number of additional wells that may eventually be connected to the pipeline, monetization of its interest in transportation fees is impossible.

No. 12-41162

The district court found, though, that an interest's "increase in value in the future does not mean that it cannot be given a present value."

We do not address the valuation issue further because the failure of the two lower courts to resolve the Section 363(f)(5) issue convinces us to remand for further proceedings with respect to this subsection. By its express terms, Section 363(f)(5) allows for the extinguishment of a nondebtor's interest in the debtor's property only upon a showing that the nondebtor "could be compelled, in a legal or equitable proceeding, to accept" money satisfaction of its interest. This court has yet to consider what constitutes a qualifying legal or equitable proceeding for purposes of Section 363(f)(5).[5] The determination of what is a qualifying legal or equitable proceeding under Section 363(f)(5) is a question to which the bankruptcy court should give the initial answer.

We VACATE the judgment of the district court affirming the judgment of the bankruptcy court that authorized the sale of the pipeline free and clear of Newco's interests. Newco's interests, including a transportation fee, security interest, and right to consent to assignments, are covenants running with the land. We REMAND to the district court for further proceedings including whether a qualifying proceeding would enable Energytec to sell the pipeline free and clear of Newco's interests under Section 363(f)(5).

---

[5] The uncertainties under Section 363(f)(5) are shown by the fact some courts have held that cram downs under 11 U.S.C. § 1129(b)(2) are qualifying proceedings. *In re Grand Slam, U.S.A., Inc.,* 178 B.R. 460, 462 (E.D. Mich. 1995); *Terrace Chalet Apartments, Ltd. v. Fed. Nat'l Mortg. Ass'n (In re Terrace Chalet Apartments, Ltd.),* 159 B.R. 821, 829 (N.D. Ill. 1993). Others have rejected that interpretation and have decided whether proceedings under nonbankruptcy law could force monetization on an owner. *Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC),* 391 B.R. 25, 46-47 (B.A.P. 9th Cir. 2008); *In re Jolan, Inc.,* 403 B.R. 866, 869-70 (Bankr. W.D. Wash. 2009).