# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

————

No. 15-40294

————

United States Court of Appeals
Fifth Circuit

**FILED**
April 1, 2016

Lyle W. Cayce
Clerk

In The Matter Of:

BNP PETROLEUM CORPORATION; BNP OIL & GAS PROPERTIES, LIMITED,

  Debtors

---------------------------------

PAUL BLACK,

  Appellant

v.

TOBY SHOR; SEASHORE INVESTMENTS MANAGEMENT TRUST; 2004 GRAT; MICHAEL B. SCHMIDT,

  Appellees

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CONSOLIDATED WITH 15-40295

In the Matter of:  BNP PETROLEUM CORPORATION

  Debtor

———————————————————————————————

PAUL BLACK, Individually and on Behalf of Black Entities,

  Appellant

v.

No. 15-40294 Cons. w/ No. 15-40295

MICHAEL B. SCHMIDT, Trustee; SEASHORE INVESTMENTS
MANAGEMENT TRUST; TOBY SHOR; 2004 GRAT,

　　　　Appellees

ーーーーーーーーーー

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 2:13-CV-322

ーーーーーーーーーー

Before BENAVIDES, DENNIS, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

　　In these consolidated appeals, Appellant Paul Black challenges an order of the bankruptcy court approving the sale of certain assets of the Debtors' Estates (the "Approval Order"), as well as the bankruptcy court's subsequent denial of Black's Rule 60 Motion to Set Aside ("Rule 60 Motion") the Approval Order. Black appealed each of these rulings to the United States District Court for the Southern District of Texas, which ultimately affirmed both orders. These appeals followed. Finding no reversible error in the relevant decisions below, we affirm.

**I.**

　　Paul Black, members of his family, and a number of business entities in which Black owns an interest have been in litigation with Toby Shor, Seashore Investments Management Trust, and 2004 GRAT (collectively, "Shor") for several years over Shor's monetary investments in, and loans to, Black's

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-40294 Cons. w/ No. 15-40295

enterprises.  Two of Black's businesses, BNP Petroleum and BNP Oil & Gas Properties, Ltd., (jointly, Debtors), were placed into bankruptcy proceedings and jointly administered as Chapter 7 liquidation cases, with Michael B. Schmidt ("Trustee") appointed as the Trustee for each.

During the pendency of the bankruptcy, Shor moved for relief from the automatic stay in order to pursue claims in arbitration against Black and his companies.  These claims arose out of investments Shor had made in various companies operated by Black.  In August 2010, an arbitration panel found in favor of Shor, concluding, *inter alia,* that Black had wrongfully transferred millions of dollars from these companies for his own personal use and benefit. Shor was awarded approximately $30 million.

Based in part on the arbitration panel's findings, the Trustee filed an adversary action against both Black and Shor in the United States Bankruptcy Court for the Southern District of Texas.  The Trustee claimed that both sets of defendants had benefited from improper transfers from the Debtors, alleging, *inter alia*, theories of fraudulent transfer and conversion.  Along with her answer to the Trustee's complaint, Shor filed a counterclaim against the Trustee, seeking attorney's fees.  Shor then sought to collect on the $30 million judgment against Black by filing a motion in Texas state court for a turnover order on certain assets owned by Black.

On June 8, 2011, Black negotiated with the Trustee a settlement of the Adversary Proceeding (the "Black Settlement").  Pursuant to that agreement, Black would transfer his ownership interests in his businesses to the Trustee, thereby escaping a potential court order to turn over those interests to Shor.

3

According to the agreement, Black agreed to pay the sum of $1.5 million as follows:

> Monthly proceeds paid to the Trustee generated from operations of Black Entities, equal to 10% of the net proceeds, of each operation of all Black Entities and which are payable on a month-to-month basis from the Effective Date of the Settlement Agreement. Nothwithstanding, [sic] Black shall make to the Trustee minimum monthly payments of $6,000 per month, beginning July 1, 2011 and continuing with regular monthly payments thereafter of no less than $6,000 until July 1, 2021 when the entire remaining unpaid balance shall be due.

Performance of this payment schedule was secured by Black's transfer of his ownership interests in the Black Entities to the Trustee, to be re-conveyed to Black upon payment in full or upon final liquidation of all Estate assets. However, because the Trustee was acting on behalf of the Debtors' Estates, the Black Settlement agreement was expressly "subject to final approval from the Bankruptcy Court." Notably, nothing in the Black Settlement agreement expressly precluded the Trustee from negotiating any other agreements that might better resolve the issues confronting the Estates.

After the Black Settlement was executed, but before it was approved by the bankruptcy court, Shor offered and the Trustee accepted a competing agreement (the "Shor Sale Agreement"). According to that agreement, Shor would purchase the Trustee's claims against Black in the Adversary Proceeding in exchange for an upfront cash payment of $216,000. In addition, from the proceeds of any collection from Black, Shor would pay the Trustee 50% of the first $500,000 recovered and 10% of all other amounts recovered up to a total amount of $1.75 million. Pursuant to the agreement, mutual releases would, *inter alia*, end the Adversary Proceeding claims between Shor and the

4

Trustee. Like the Black Settlement, the sale to Shor of the Trustee's claims against Black was also subject to approval by the bankruptcy court.

On June 28, 2011, the Trustee and Shor filed a joint motion in the bankruptcy court that sought the court's approval of the Shor Sale Agreement. The bankruptcy court subsequently conducted a hearing to consider the Shor Sale Agreement, the Black Settlement Agreement, and an offer from a third party, Walter Oblach. On July 26, 2011, the bankruptcy court approved the Shor Sale Agreement as being in the best interest of the Debtors' Estates and, in so doing, also declined to approve the proposed Black Settlement and the offer made by Oblach. The bankruptcy court concluded, *inter alia*, that the Trustee and Shor negotiated and entered in the Shor Sale Agreement in good faith, that there had been no collusion or other misconduct by the Trustee or Shor, and that neither the Trustee nor Shor breached the Black Settlement agreement or violated any duties to Black by entering into the Shor Sale Agreement.

Black then filed in the district court a Notice of Appeal of the bankruptcy court's Approval Order and a motion for an emergency stay. A temporary stay was granted by the district court, but the court ultimately terminated the stay upon Shor's motion and denied any further stay. Black did not seek any relief from the district court's denial of the stay. The parties proceeded to brief the merits of Black's challenge to the Approval Order in the district court, and Shor also filed a motion to dismiss Black's appeal as moot because there was no longer a stay in effect as required by 11 U.S.C. § 363(m).

Meanwhile, in August 2011, Shor's counsel obtained a turnover order from the County Court at Law #3, Nueces County, Texas conveying Black's interest in Black-owned entities to Shor. Thereafter, the Trustee filed an Emergency Motion for Authority to Convey Black Entity Interest to Shor, in

the event that the state court later ordered the Trustee to do so.  A hearing was held before the bankruptcy court on the motion, and the court ultimately authorized the Trustee to convey the interests to Shor.  Thereafter, the county court ordered the Trustee to convey the property to Shor.  The county court then issued two additional turnover orders.  The last of these, which issued in November 2011, required Shor to turn over to the Sheriff possession of the interests she obtained in the Black entities from the Trustee.  Black appealed each of the county court's turnover orders to the Texas Court of Appeals for the Thirteenth District of Texas, and that court reversed.  *Black v. Shor*, 443 S.W.3d 170 (Tex. App- Corpus Christi-Edinburg, 2013).  The Court of Appeals held that the first turnover order of August 2011 was in error because it issued in violation of the automatic stay of 11 U.S.C. § 362(a).  *Id*. at 180.  The Court of Appeals reversed the last two turnover orders because there was no evidence presented, as required by Texas law, showing that the property in question could not be readily attached or levied by ordinary legal processes.  *Id*. at 180-81.

On December 11, 2012, Black filed what ultimately was construed as a Rule 60 Motion to set aside the bankruptcy court's approval of the Shor Sale Agreement, *i.e.,* the Approval Order.  In light of this motion, Black's initial appeal in the district court of the bankruptcy court's Approval Order was abated until the bankruptcy court ruled on the Rule 60 Motion.  On October 1, 2013, the bankruptcy court issued a memorandum opinion and order denying Black's Rule 60 Motion without permitting discovery.  The bankruptcy court concluded that Black's motion, which was filed, at the earliest, sixteen months after the Approval Order issued, was untimely given the one-year time bar.  The bankruptcy court further concluded that none of the exceptions to the one-year deadline applied.  Specifically, the court expressly rejected Black's

argument that Shor had committed a "fraud on the court" through alleged non-disclosures in connection with the proceedings to approve the Shor Sale Agreement. Black then filed an additional notice of appeal to the district court which challenged the denial of his Rule 60 Motion.

On January 27, 2015, the district court issued orders and opinions in both Black's appeal of the Approval Order and Black's appeal of the bankruptcy court's denial of his Rule 60 Motion. With respect to the appeal of the Approval Order, the district court granted in part Shor's motion to dismiss the appeal on the basis of mootness under 11 U.S.C. § 363(m) but denied Shor's motion to dismiss to the extent Black challenged the good faith of the parties to the Shor Sale Agreement. However, upon concluding that the parties entered into the Shor Sale Agreement in good faith within the meaning of 11 U.S.C. § 363(m), the district court affirmed the bankruptcy court's order approving the Shor Sale Agreement. Black then appealed that ruling to this court.

The district court also affirmed the bankruptcy court's denial of Black's Rule 60 Motion. The district court concluded, *inter alia*, that the bankruptcy court did not abuse its discretion in concluding that Black's Rule 60 Motion was untimely under the one-year time bar. The district court also rejected Black's claim that Shor had committed fraud on the court such to circumvent the one-year time bar. Rejecting Black's argument that Shor had failed to disclose certain material facts to the bankruptcy court during the sale approval proceedings, the district court concluded that these facts "had been disclosed" but, in any event, would not constitute a fraud on the court because they would be "less egregious misconduct." Further, the district court also rejected as "speculative" Black's claim that Shor and the county court judge were engaged in a "nefarious plot" against Black that they failed to disclose to the bankruptcy

7

court during the Approval Order proceedings. Black then appealed to this court the district court's decision affirming the denial of his Rule 60 Motion.

## II.

"The Court of Appeals reviews the decision of a district court, sitting as an appellate court, by applying the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court." *In re Energytec, Inc.*, 739 F.3d 215, 218 (5th Cir. 2013) (internal quotation marks omitted). The bankruptcy court's findings of fact in support of its Approval Order are reviewed for clear error and its conclusions of law are reviewed *de novo*. *See In re TMT Procurement Corp.*, 764 F.3d 512, 519 (5th Cir. 2014). Mixed questions of law and fact are reviewed *de novo*. *See id*. We review the bankruptcy court's decision denying Black's Rule 60 Motion for an abuse of discretion. *See Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 638 (5th Cir. 2005).

## III.

We first consider Black's argument that the bankruptcy court initially erred in approving the Shor Sale Agreement, which, *inter alia*, transferred the Trustee's claims against Black in the adversary proceeding to Shor.

"A trustee may sell litigation claims that belong to the estate, as it can other estate property, pursuant to [11 U.S.C.] § 363(b)." *In re Moore*, 608 F.3d 253, 258 (5th Cir. 2010). However, any challenge on appeal to the approval of such a sale is subject to the statutory mootness provision contained in 11 U.S.C. § 363(m), which provides:

> The reversal or modification on appeal of an authorization under subsection (b) . . . of this section of a sale . . . of property does not affect the validity of a sale . . . under such authorization to an entity that purchased . . . such property in good faith, whether or

not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

As we have explained, this provision "patently protects, from later modification on appeal, an authorized sale where the purchaser acted in good faith and the sale was not stayed pending appeal." *In re Gilchrist*, 891 F.2d 559, 560 (5th Cir. 1990). "The section codifies Congress's strong preference for finality and efficiency in the bankruptcy context, particularly where third parties are involved." *Energytec*, 739 F.3d at 218-19 (internal quotation marks omitted). Relevant here, however, there is an exception to this statutory rule of mootness contained in the express language of § 363(m): the absence of a stay will not moot the appeal of a sale authorization to the extent that the appeal challenges the "good faith" of the purchaser. *See TMT Procurement Corp.*, 764 F.3d at 520-22.

In this case, the district court relied upon § 363(m) in concluding that Black's failure to obtain a stay of the bankruptcy court's Approval Order of the Shor Sale Agreement mooted Black's appeal of the Approval Order—*except* to the extent that Black challenged the good faith of the parties. Black's opening brief to this court did not challenge this finding of mootness under § 363(m), and the issue is therefore waived. *See Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994). Rather, Black's opening brief is devoted entirely to his contention that the sale was not made in "good faith." Thus, the salient question before us is whether the lower courts erred in concluding that the Shor Sale Agreement was entered in good faith.[1]

In analyzing Black's challenge to the parties' good faith, the district court noted that "Black's argument is premised entirely on the fact that the Trustee

---

[1] As the district court accurately noted, our court has recently observed that there is "some confusion in our circuit" whether a determination by a lower court that a party acted

had executed the Black Settlement, had acted upon the Black Settlement in the State Court Action, and then entered into confidential negotiations with Shor resulting in the Shor Sale, which effectively prevented the Black Settlement from being approved." Rejecting Black's argument, the district court accurately observed that the Trustee was under a duty to entertain all serious offers in light of a trustee's general obligation to "demonstrate that the proposed sale price is the highest and best offer." *Moore*, 608 F.3d at 263. The district court likewise emphasized that the Black Settlement Agreement was subject to final approval by the bankruptcy court. This is consistent with the mandate of § 363, which requires that a sale of the estate's assets "be supported by an articulated business justification, good business judgment, or sound business reasons." *Moore*, 608 F.3d at 263 (citing *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986)). The district court further concluded that "there was no proof of fraud, collusion, or the taking of unfair advantage of other bidders connected with the Shor Sale." As further evidence that the Shor Sale Agreement was entered in good faith, the district court noted that "Shor's offer provides some guaranteed value, has a greater potential recovery on the contingent future percentage of collections than that promised by the Black Settlement, and ends controversies that diminish the estate through administrative expenses." In light of these considerations, the district court concluded that the bankruptcy court did not err in determining that Shor was

---

in "good faith" should be reviewed *de novo* or for clear error. *See TMT Procurement Corp.*, 764 F.3d at 520-22. However, we need not resolve this issue here because we find the lower court's conclusion as to good faith correct under either standard.

a good faith purchaser within the meaning of § 363(m) and thus approving the Shor Sale Agreement.

Based upon our careful review of the record, pertinent case law, the parties' respective briefs and oral arguments, we agree with the district court that the bankruptcy court did not err in determining that the parties entered into the Shor Sale Agreement in good faith. As an initial matter, nothing in the Black Settlement agreement precluded the Trustee from considering competing and better offers. Indeed, the Black Settlement agreement expressly provided that its provisions were subject to final approval by the bankruptcy court. Thus, contrary to Black's arguments, we discern no evidence of bad faith in the Trustee's decision to consider Shor's competing settlement agreement. Further, as the bankruptcy court's underlying findings accurately detail, the record amply supports the Trustee's determination that the Shor Sale Agreement was in the better interest of the estate as compared to the Black Settlement. For example, whereas there was significant risk that the Trustee would not succeed in its claims against Shor in the Adversary Proceeding, the Trustee's claims against Black were more viable—as evidenced by Shor's successful and substantial arbitration award against Black. In addition, the Shor Settlement Agreement made Shor incur the costs of prosecution against Black, thus reducing the significant cost to the estate of prosecuting its claims against Black. Moreover, the Shor Sale Agreement provided the estate with immediate cash and also eliminated the underlying controversy between Shor and the estate, thereby reducing the significant corresponding costs to the estate. In sum, we agree with the district court that

11

No. 15-40294 Cons. w/ No. 15-40295

the Shor Sale Agreement was entered into by the parties in good faith and, therefore, that the Approval Order should be affirmed.

## IV.

We next consider whether the bankruptcy court abused its discretion in denying Black's Rule 60 Motion.  As the district court accurately summarized, Black's Rule 60 Motion alleged "that the Bankruptcy Court's approval of the [Shor] Sale Agreement was fraudulently obtained after [Shor] concealed from the Bankruptcy Court that [Shor] and [her] attorneys: (1) were seeking a turnover order from Nueces County Court at Law No. 3 that would illegally convey ownership of certain Black Entities directly to [Shor]; (2) had entered into an agreement with the Canales Group, who oversaw the Black children's trust, whereby [Shor] would convey to them 10% of [her] recoveries from Black on the Arbitration Award; and (3) had convinced a limited partner of Black to breach fiduciary duties to Black by agreeing not to assist Black but to instead affirmatively provide Seashore with material assistance in its collection efforts."  The bankruptcy court denied Black's motion upon concluding that the motion was untimely filed under Federal Rule of Civil Procedure 60 and that no exception to the one-year filing requirement applied under either Rule 60(b)(6) or Rule 60(d)(3).  The district court affirmed.  For the reasons that follow, we agree with the district court and find that the bankruptcy court's decision did not constitute an abuse of discretion.

Federal Rule of Civil Procedure 60(b)(6) allows a court to relieve a party from a final judgment for "any other reason that justifies relief."  Critically, however, "[r]elief under this section is granted only if extraordinary circumstances are present."  *Hesling v. CSX Trans., Inc.*, 396 F.3d 632, 642 (5th Cir. 2005) (internal quotation marks omitted).  Moreover, a motion filed under this subsection must be filed "within a reasonable time" after the entry

12

of judgment, as opposed to the one-year filing requirement that applies to other grounds for relief under Rule 60(b). FED. R. CIV. P. 60(c). "What constitutes a reasonable time under Rule 60(b) depends on the particular facts of the case in question." *First RepublicBank Fort Worth v. Norglass, Inc.*, 958 F.2d 117, 119 (5th Cir. 1992). Further, a lower court's determination that a "motion was not filed within a 'reasonable time' is reviewed on appeal under the highly deferential abuse of discretion standard." *Id.*

In affirming the bankruptcy court's determination that Black did not file his Rule 60(b)(6) motion within a "reasonable time," the district court observed that Black's arguments for setting aside the judgment are based on facts that were largely disclosed to the bankruptcy court at the time of the hearing on the Approval Order. Specifically, "Shor disclosed that she had obtained an agreement with the Canales Group and that she intended to seek turnover of Black's interests in the Black Entities." Although these facts were disclosed in the bankruptcy court, "Black waited more than a year after the Shor Sale approval order, more than a year after the initial turnover order, and more than a year after the disputed conduct came to rest with the final turnover order on November 4, 2011, before seeking the Bankruptcy Court's intervention." In light of these particular facts, we agree with the district court and perceive no abuse of discretion in the bankruptcy court's denial of Black's Rule 60 Motion to the extent it relied upon Federal Rule of Civil Procedure 60(b)(6).

Black alternatively argues that the Approval Order should be set aside because Shor committed a "fraud on the court" under Federal Rule of Civil Procedure 60(d)(3) and is thus not subject to any strict timing requirement. "The standard for fraud on the court is . . . demanding. Only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication

of evidence by a party in which an attorney is implicated, will constitute fraud on the court." *Jackson v. Thaler*, 348 F. App'x 29, 34 (5th Cir. 2009) (internal quotation marks and citation omitted).

The bankruptcy court rejected Black's fraud-on-the-court argument because the alleged non-disclosures were, in fact, substantially disclosed to the bankruptcy court. For example, the bankruptcy court observed that, at the hearing to approve the Shor Sale Agreement, Shor's attorney made it very clear that they intended to seek a turnover order in state court. Further, Shor's counsel also disclosed that Shor had entered into an agreement with the Canales Group. Black's argument on appeal is substantially devoted to his contention that Shor failed to disclose to the bankruptcy court that she and others were engaged in an alleged conspiracy with the state court judge and others to obtain an illegal turnover order. Stated simply, Black avers that, because the county court entered erroneous turnover orders *after* the Shor Sale Agreement was approved by the bankruptcy court, then Shor, her attorneys, and the county court judge must have had a fraudulent state of mind at the time of the hearing on the Approval Order. We disagree. As the bankruptcy court observed, Black's allegations are essentially complaints about Shor's post-settlement collection efforts. Even if Shor's subsequent efforts to obtain turnover orders did not strictly follow the requirements of Texas law, the bankruptcy court nevertheless acted within its discretion in concluding that Shor did not commit a fraud on the bankruptcy court in initially stating her intent to pursue those turnover orders. Indeed, as a review of the relevant bankruptcy court order reveals, Shor's intent to seek a turnover order was not the sole basis for approving the Shor Settlement Agreement. Rather, numerous other components of the agreement revealed that it was in the better interests of the estate. As to Black's claims that Shor and others were engaged

in a nefarious plot against Black, the district court rightly observed that this argument is entirely speculative. For these reasons, we agree that the bankruptcy court did not abuse its discretion in concluding that no fraud on the court had occurred and that Black's motion to set aside the Approval Order under Federal Rule of Civil Procedure 60(d)(3) should be denied. We likewise perceive no error in the bankruptcy court's decision to deny Black's request for discovery in connection with his Rule 60 Motion.

## V.

For these reasons, the relevant bankruptcy court decisions are AFFIRMED.