2011 Ark. 448

**Curtis BRIDGES, Appellant**

v.

**Glen SHIELDS, Administrator for the Estate of Hazel Mae Frazier, Deceased, Appellee.**

No. 11–69.

Supreme Court of Arkansas.

Oct. 27, 2011.

Rehearing Denied Dec. 8, 2011.

McKissic & Associates, PLLC, by: Jackie B. Harris, Pine Bluff, for appellant.

Walters & Gaston, by: Troy Gaston, Greenwood, for appellee.

ROBERT L. BROWN, Justice.

This case involves the question of whether appellant, Curtis Bridges, had a curtesy interest in a settlement award involving his deceased wife, Hazel Mae Frazier. The circuit court rejected Bridges's claim. We affirm.

The facts of this case are undisputed. Hazel Mae Frazier, who had been married three times, connects all the parties in this case. Her second husband, Elree Frazier, Sr., died on September 17, 2001, after taking a medication named Vioxx. Mr. Frazier had no known relatives or descendants, except for Ms. Frazier and seven stepchil-

dren. After Mr. Frazier's death, Ms. Frazier married Bridges.[1]

On April 28, 2007, Ms. Frazier died, leaving behind her husband, Bridges, and her seven children, who are the stepchildren of Elree Frazier. On August 20, 2007, approximately three months after Ms. Frazier's death, Glen Shields, one of the stepchildren, filed a Petition for Authority to File a Wrongful Death Claim against Merck Co., Inc., the manufacturer of Vioxx, on behalf of Mr. Frazier. A probate order authorizing Shields to file a claim on behalf of the Estate of Elree Frazier, Sr., was filed on September 4, 2007. Subsequently, Shields obtained a $123,846.71 settlement with Merck on behalf of the Estate of Elree Frazier, Sr.

Because Mr. Frazier's only known relatives at the time of his death were Ms. Frazier and his seven stepchildren, the settlement proceeds were funneled into the Estate of Hazel Mae Frazier for distribution to Mr. Frazier's seven stepchildren. On November 30, 2009, Shields filed a petition to have himself appointed administrator for Ms. Frazier's estate. An estate was opened for Ms. Frazier on December 7, 2009, the sole asset of which was the Merck settlement money. An order appointing Shields administrator was entered on December 14, 2009. After publication of the opening of Ms. Frazier's estate, Bridges filed a claim with the Circuit Court of Cleveland County, probate division, stating that he was entitled to receive one-third of the proceeds obtained from the Merck settlement because of his curtesy interest.

On December 31, 2009, an order authorizing the partial distribution of proceeds from Ms. Frazier's estate was entered. That order found that Ms. Frazier had inherited $123,846.71 from her deceased husband, Elree Frazier. The order stated that those funds had been recovered pursuant to a wrongful-death action filed against Merck. The order further stated, albeit incorrectly, that the decedent, Ms. Frazier, left eight children. The order, however, provided that Shields, as personal representative, was to distribute $7,740.42 to the eight children. Bridges was listed as one of the eight recipients. On May 14, 2010, the circuit court entered a second order that modified the partial distribution of Ms. Frazier's estate. In this order, the seven children each received $8,846.19. Bridges was not included in this distribution.

On July 16, 2010, Bridges filed an affidavit in support of his claim against Ms. Frazier's estate. In his affidavit, he asserted that the estate owed him $41,278.10 as his curtesy interest. On July 27, 2010, Shields, as administrator of Ms. Frazier's estate, moved for summary judgment and contended that Bridges was not entitled to any of the Merck settlement proceeds. Shields emphasized that the wrongful-death claim had not been pursued until after Ms. Frazier's death. He further claimed that when Ms. Frazier died, she was not seized and possessed of those proceeds as Arkansas law required, and, therefore, Bridges did not have a curtesy interest. Bridges answered and pointed out that when Ms. Frazier died, she had a vested property right to sue and recover damages for the wrongful death of Mr. Frazier. Bridges further maintained that Ms. Frazier had a chose in action, which is recognized as a property right in Arkansas. He argued, as a final point, that the first order dated December 31, 2009, awarding him $7,740.42 from the settle-

---

1. Although the record is unclear on this point, it appears that Ms. Frazier never legally changed her surname after her marriage to Bridges. The estate opened after her death is the Estate of Hazel Mae Frazier. Thus, we refer to her as Ms. Frazier.

ment proceeds, was binding on Ms. Frazier's estate and had not been set aside.

On October 19, 2010, the circuit court entered an order granting Shields's motion for summary judgment. After setting out the undisputed facts, the court first focused on Arkansas's dower and curtesy statute, which provides: "If a person dies leaving a surviving spouse and a child or children, the surviving spouse shall be entitled, as part of dower or curtesy in his or her own right, to one-third (⅓) part of the personal estate whereof the deceased spouse died seized or possessed." Ark. Code Ann. § 28–11–305 (Repl.2004). The circuit court next stated that the issue before the court was whether Hazel Mae Frazier was seized and possessed of the Merck settlement proceeds at the time of her death.

To make that determination, the circuit court next looked to two cases referenced in the annotations to section 28–11–305. The first case was *Mulhollan v. Thompson*, 13 Ark. 232 (1853). The circuit court noted that in *Mulhollan*, this court held that a widow is not entitled to dower in the choses in action belonging to the estate of her deceased husband. The second case the circuit court adduced was *Hill's Administrators v. Mitchell*, 5 Ark. 608 (1844), which held that the statute entitling a widow to dower in her husband's personal estate does not include choses in action.

After citing these two cases, the circuit court discussed what constitutes a chose in action. Quoting from *Gregory v. Colvin*, 235 Ark. 1007, 363 S.W.2d 539 (1963), the circuit court determined that a chose in action means "literally a thing in action, and is the right of bringing an action, or a right to recover a debt or money, or a right of proceeding in a court of law to procure the payment of a sum of money or a right to recover a personal chattel or sum of money by action." *Id.* at 1008, 363

S.W.2d at 540. The circuit court concluded that in the instant case, Ms. Frazier held a "classic chose in action" but that she was not seized and possessed of any proceeds that were subsequently obtained by Mr. Frazier's estate as required by section 28–11–305. The circuit court added that because Ms. Frazier's estate served as a mere conduit for the passage of assets from Mr. Frazier's estate, Bridges acquired no curtesy interest in those assets.

Bridges raises one issue in his appeal and that is whether the circuit court correctly granted summary judgment against him on the basis that he had no curtesy interest in the Merck settlement proceeds. The standard of review used by this court in reviewing a grant of summary judgment is well settled. Summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated and the moving party is entitled to judgment as a matter of law. *Sykes v. Williams*, 373 Ark. 236, 239–40, 283 S.W.3d 209, 213 (2008). The question for this court to decide is whether the circuit court ruled correctly on the question of law presented.

■ The first step in answering this question is determining whether the circuit court correctly ruled that Ms. Frazier had a chose in action in the Merck settlement proceeds. If she did not have a chose in action, then she could not have been seized and possessed of the Merck settlement funds. If she did have a chose in action, however, then the analysis moves to whether she was seized and possessed of the settlement proceeds when she died, as section 28–11–305 requires.

■ A chose in action, as the circuit court found, "means, literally, a thing in action, and is the right of bringing an action, or a right to recover a debt or money, or a right of proceeding in a court

of law to procure the payment of a sum of money, or a right to recover a personal chattel or a sum of money by action." *Gregory*, 235 Ark. at 1008, 363 S.W.2d at 540.

With this definition in mind, we turn to an analysis of Arkansas's wrongful-death statute. That statute is found at Arkansas Code Annotated section 16–62–102 and is based on the common-law premise that when a person is wrongfully killed, that person's heirs at law suffer a legal injury for which they may be compensated. *See, e.g., Graysonia–Nashville Lumber Co. v. Carroll*, 102 Ark. 460, 470, 144 S.W. 519, 522 (1912) ("The husband is entitled to the society and companionship of his wife; and, where he is deprived of her services and society or companionship, he has suffered a legal injury, and is entitled to compensation therefor."). Under the statute, a cause of action for wrongful death "shall be brought and maintained in the name of the personal representative of the deceased person." Ark.Code Ann. § 16–62–102(b) (Repl.2005). If no personal representative is appointed, then the action shall be brought by the heirs at law of the deceased. *Id.* The beneficiaries of a wrongful-death action are defined by statute as the surviving spouse, children, father, mother, brothers, and sisters of the deceased person, as well as those who stood in loco parentis to the deceased and those to whom the deceased stood in loco parentis at any time. Ark.Code Ann. § 16–62–102(d)(1) to (3) (Repl.2005). No part of a wrongful-death recovery becomes an asset of the deceased's estate. Ark. Code Ann. § 16–62–102(e) (Repl.2005).

It is apparent that the wrongful-death statute makes it very clear that the cause of action for wrongful death must be brought by the personal representative of the deceased's estate, or failing that, by all of the beneficiaries of the decedent.

There is no cause of action for wrongful death created in any individual beneficiary under the wrongful-death statute. *Davenport v. Lee*, 348 Ark. 148, 160, 72 S.W.3d 85, 91 (2002); *Brewer v. Lacefield*, 301 Ark. 358, 362, 784 S.W.2d 156, 158 (1990) ("The wrongful death code provisions do not create an individual right in any beneficiary to bring suit.") (citing *Cude v. Cude*, 286 Ark. 383, 691 S.W.2d 866 (1985)). Accordingly, there can be no chose in action in any one individual beneficiary under the wrongful-death statute because the statute does not create a cause of action in any individual beneficiary. For this reason, we conclude that Ms. Frazier did not have a chose in action regarding the Merck settlement proceeds under the wrongful-death statute.

Bridges relies on the case of *Lee v. Potter*, 193 Ark. 401, 100 S.W.2d 252 (1937), to support his position, but that case is readily distinguishable and not controlling. The facts of *Lee* were set out by the court as follows:

> The appellants in this case are children of Charles E. Potter, deceased, who, at the time of his death, had been married three times. Appellee was his third wife and the stepmother of said children. *During the life of the second wife, Charles E. Potter procured a life insurance policy on his life payable in case of his death to his then wife, Maude M. Potter, if she survived him, and if not, to his executors, administrators, or assigns.*
>
> . . . .
>
> On December 1, 1935, Charles E. Potter died intestate, leaving surviving him his children, the appellants, and his widow, Grace Lela Potter, the appellee. His second wife, Maude M. Potter, predeceased him and he made no change in his lifetime of the beneficiaries mentioned in the policy. On December 4,

1935, Grace E. Potter, his widow, was duly appointed administratrix of the estate of Charles E. Potter, deceased. His estate was insolvent at the time of his death. There was due on the policy $2,638.03 which was claimed on the one hand by the children of the deceased, and on the other by the administratrix. In view of this dispute as to the ownership of the net proceeds of the policy, the Aetna Life Insurance Company filed a complaint of interpleader in the chancery court of Pulaski county and made the claimants of the proceeds parties defendant. It paid the amount due on the policy into the registry of the court and prayed that it be discharged from further liability.

. . . .

The main question arising on this appeal is whether the proceeds of the policy are payable to the children of the deceased under the statute of descent and distribution or to the administratrix as a part of the estate of the deceased.

*Lee v. Potter*, 193 Ark. 401, 402–03, 100 S.W.2d 252, 252–53 (1937) (emphasis added).

The *Lee* court held that nothing in the Arkansas Statutes prevented an insured from making his executors, administrators, or assigns a beneficiary in a policy of insurance. *Id.*, 100 S.W.2d at 253. After the death of Charles's second wife, Maude, the named beneficiary, the policy named Charles's estate as the contingent beneficiary. Because Charles did not change the policy after Maude's death, the policy stood just as if it had been originally made for the benefit of Charles's estate. The *Lee* court then held that the "proceeds of the policy were clearly a chose in action and that there can be no question that a widow is entitled to her dower interest in all choses in action which belong to her

husband at the time of his death." *Id.*, 100 S.W.2d at 254.

In reaching this conclusion, the *Lee* court relied on an Oklahoma case, *Burdett v. Burdett*, 26 Okla. 416, 109 P. 922 (1910). In *Burdett*, the Oklahoma Supreme Court concluded that a widow is entitled to her dower interest in the life insurance proceeds of her husband when the husband died with the title of the policies in his name and the money due thereunder belonging to him. *Id.* at 928. In *Burdett*, the court found in part:

> Deceased having an insurable interest therein insured his life, naming himself, his "executors, administrators, or assigns" the beneficiary in these policies. Being payable to his assigns he, of course, had the sole beneficial or assignable interest therein, and they being choses in action, he could, at any time before his death, have parted with such interest the same as with his interest in any other choses in action.

*Id.* at 926.

It is clear in *Lee* that Charles had a chose in action during his lifetime, because he could have changed the life insurance policy at any time before his death and because the money was due and owing to his estate, at the moment of his death. Thus, Charles, or his estate, had the right to sue on that policy. Those are not the facts in the case before us. Ms. Frazier did not have a right to the Merck proceeds during her lifetime; nor did she have an individual right to bring suit under the wrongful-death statute. *See, e.g., Davenport*, 348 Ark. 148, 72 S.W.3d 85.

As we have often said, we will affirm the circuit court where it reaches the right result, even though it may have announced the wrong reason. *See, e.g., Dunn v. Westbrook*, 334 Ark. 83, 85, 971 S.W.2d 252, 254 (1998). The circuit court found that Ms. Frazier was possessed of a chose

in action, which was incorrect as a matter of law. Nevertheless, the circuit court reached the right result in denying Bridges's claim under the dower and curtesy statute. Thus, we affirm the order of the circuit court, but we do so for the reason that Ms. Frazier never possessed a chose in action.

Affirmed.