# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 20, 2024

Lyle W. Cayce
Clerk

No. 23-20104

In the Matter of Fieldwood Energy LLC

*Debtor*,

Swiss Re Corporate Solutions America Insurance Company, *formerly known as* North American Specialty Insurance Company; Lexon Insurance Company; Ironshore Indemnity Incorporated; Ironshore Specialty Insurance Company,

*Appellants*,

*versus*

Fieldwood Energy III, L.L.C.; Fieldwood Energy Offshore L.L.C.; Fieldwood Energy Incorporated; GOM Shelf LLC; FW GOM Pipeline Incorporated,

*Appellees*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-2201

Before Southwick, Engelhardt, and Wilson, *Circuit Judges*.

Leslie H. Southwick, *Circuit Judge*:

Fieldwood Energy LLC entered bankruptcy in 2020. The resulting reorganization plan for the company was the product of a complex negotiation process with numerous parties. The bankruptcy court's confirmation order stripped subrogation rights from some of those who had issued surety bonds to the debtors. These sureties are the appellants. They challenged the loss of subrogation rights at the district court. Rather than address the sureties' challenges on the merits, the district court held their appeal was statutorily and equitably moot. The primary question on appeal is whether a recent Supreme Court decision alters the landscape around statutory mootness. Any change does not affect this appeal. AFFIRMED.

## FACTUAL AND PROCEDURAL BACKGROUND

Fieldwood Energy LLC and its affiliates (the "Debtors") were previously among the largest oil and gas exploration and production companies operating in the Gulf of Mexico. Declining oil prices, the COVID–19 pandemic, and billions of dollars in decommissioning obligations caused Fieldwood to file for chapter 11 bankruptcy in August 2020. Negotiations began in March 2020 with creditors and other entities, including the U.S. Department of Justice and the U.S. Department of the Interior (collectively, the "Government"). A reorganization plan was finalized 18 months later.

First, some background on one part of the Debtors' financial burdens. Oil and gas companies operating on the Outer Continental Shelf have decommissioning obligations. 30 C.F.R. §§ 250.1701–03. A company is required, once relevant facilities are no longer used, to take such measures as plugging wells, decommissioning pipelines, removing platforms, and clearing the seafloor of obstructions created by the company's operations.

2

§ 250.1703.   A key objective of the Debtors' reorganization plan was to provide a means to satisfy their extensive decommissioning obligations.  The plan required a complex series of transactions, including: (1) the sale of some of the Debtors' oil and gas assets and equity interests for approximately $1.03 billion (the "Credit Bid Sale"); (2) divisive mergers of Fieldwood after the consummation of the Credit Bid Sale, with the allocation of some oil and gas assets among the resulting entities; and (3) the abandonment of other oil and gas assets after reaching agreements with the Government.

One significant disagreement during the reorganization plan's complex development was whether the subrogation rights of some companies (the "Sureties") that had issued surety bonds to the Debtors would survive. The bankruptcy court eventually determined they would not.  The court found that the Credit Bid Sale was "unlikely to close" if it were modified as the Sureties sought.  The success of the Credit Bid Sale was itself key to securing the Government's approval for the reorganization plan.  The Government withheld a potential objection based on environmental grounds in large part because of the plan's increased allocation of responsibility for the oil and gas assets.  The bankruptcy court would have considered any such objection a "veto [of] the Plan on an environmental" basis.

In its Confirmation Order, the bankruptcy court provided that the Credit Bid Sale and allocation of assets to the new entities would be "free and clear" of liens, claims, encumbrances, and other such interests pursuant to Section 363(f) of the Bankruptcy Code.  It further stated that the Sureties "shall not be entitled, under any circumstances, to claim a right of subrogation against the Debtors."

The Sureties sought, but failed to obtain, a stay of the Confirmation Order from the bankruptcy court.  The reorganization plan went into effect

on August 27, 2021. As the Sureties concede, the plan has been substantially consummated.

At the district court, the Sureties sought to reverse the part of the bankruptcy court's Confirmation Order dealing with the sale of the Debtors' assets free and clear of their subrogation rights. The Sureties argued that (1) the relevant provisions of the Confirmation Order are "ambiguous, incongruous, [and] contradictory," and that (2) the bankruptcy court acted beyond its authority in stripping them of their subrogation rights. Rather than reach the merits of the Sureties' challenges, the district court held that the challenges were statutorily moot under Section 363(m) of the Bankruptcy Code and equitably moot under this circuit's caselaw.

The Sureties appealed and argue for reversal and a remand to the district court to consider their challenges.

## DISCUSSION

This court "reviews the decision of a district court, sitting as an appellate court, by applying the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court." *In re Energytec, Inc.*, 739 F.3d 215, 218 (5th Cir. 2013) (quoting *Carrieri v. Jobs.com Inc.*, 393 F.3d 508, 517 (5th Cir. 2004)). Findings of fact are reviewed for clear error, and questions of law are reviewed *de novo. In re Walker Cnty. Hosp. Corp.*, 3 F.4th 229, 233–34 (5th Cir. 2021). Mixed questions of law and fact are reviewed *de novo. Id.* at 234.

To prevail on their appeal before this court, the Sureties must show their challenge is neither statutorily nor equitably moot. We resolve this appeal on the grounds that the district court correctly held the appeal was statutorily moot. We will not reach that court's alternative holding that the challenge was equitably moot as well.

No. 23-20104

We start with the controlling statutory text from which mootness arises. Section 363(m) of the Bankruptcy Code sets boundaries on a reviewing court's ability to modify or reverse certain sales and leases:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). That statutory subsection prohibits "the appellate reversal of an order to sell property or obtain post-petition financing unless such orders were stayed pending appeal." *In re Pac. Lumber*, 584 F.3d 229, 240 n.15 (5th Cir. 2009). Section 363(m) "plainly contemplates" that an appellate court may modify a covered authorization, but "the court's exercise of power may not accomplish all the appellant wishes." *MOAC Mall Holdings LLC v. Transform Holdco LLC*, 598 U.S. 288, 299 (2023). The limits on reversal or modification imposed by Section 363(m) serve the interests of finality and certainty, and by extension, encourage bidding for estate property. "If deference were not paid to the policy of speedy and final bankruptcy sales, potential buyers would not even consider purchasing any bankrupt's property." *In re Sneed Shipbuilding, Inc.*, 916 F.3d 405, 409 (5th Cir. 2019) (quoting *In re Bleaufontaine, Inc.*, 634 F.2d 1383, 1389 n.10 (5th Cir. 1981)).

The Sureties give three reasons why their appeal is not subject to Section 363(m)'s limitations. First, they argue that a 2023 Supreme Court opinion has changed how we should understand Section 363(m). *See generally MOAC Mall*, 598 U.S. 288. Second, they assert Section 363(m) does not apply because they sought a stay in the bankruptcy court. Third, they insist Section 363(m) does not apply because the provisions they

5

challenge were not integral to the sale of the Debtors' assets. We address the arguments in that order.

      *a.*    MOAC Mall

      *1.*    *Did the Supreme Court narrow Section 363(m)?*

In an appeal by a creditor in bankruptcy proceedings involving Sears, Roebuck and Co., the Supreme Court recently held that Section 363(m) is not a jurisdictional provision, meaning — among other things — that it can be waived. *MOAC Mall*, 598 U.S. at 297. The Sureties argue that in holding Section 363(m) is nonjurisdictional, the Supreme Court fundamentally narrowed the provision's ability to bar relief on appeal. They relatedly claim that the district court in this case treated Section 363(m) as jurisdictional.

We will examine the Supreme Court's opinion for its potential impact here. The debtor in possession had sold some assets pursuant to Section 363(b). *MOAC Mall*, 598 U.S. at 292. The purchaser of those assets and one of the debtor's lessors became involved in a dispute. *Id.* at 293. The purchaser prevailed in bankruptcy court, and the lessor indicated it would appeal. *Id.* at 293–94. The purchaser informed the bankruptcy court it would not invoke Section 363(m) in the lessor's appeal. *Id.* at 294. The bankruptcy court denied the lessor a stay pending appeal and "emphasized that [the purchaser] Transform had explicitly represented that it would not invoke § 363(m) against [lessor] MOAC's appeal." *Id.* The lessor was successful on appeal to district court; the purchaser then sought rehearing and, forsaking its earlier commitment, invoked Section 363(m). *Id.* The district court was "appalled," but considered itself bound by Section 363(m) to dismiss the appeal as statutorily moot. *Id.* (citing *In re Sears Holdings Corp.*, 616 B.R. 615, 624–25 (S.D.N.Y. 2020) (explaining why the district court found statutory mootness)). The Second Circuit affirmed, applying its precedent that

Section 363(m) was jurisdictional and not subject to rules like waiver or estoppel that might have otherwise barred its belated invocation. *Id.*

The Supreme Court granted a writ of certiorari to resolve a split among the circuit courts on whether Section 363(m) was jurisdictional. *Id.* The Court held that the provision fell into the category of nonjurisdictional rules that are not "impervious to excuses like waiver or forfeiture." *Id.* at 297, 304–05. The Supreme Court explained that preconditions to relief and to suit that are jurisdictional come into existence only when "Congress 'clearly states' as much." *Id.* at 298 (quoting *Boechler, P.C. v. Comm'r*, 596 U.S. 199, 203 (2022)). No such clear statement existed regarding Section 363(m). *Id.* at 304–05. Nonetheless, the Court recognized that compliance with a precondition may be "important and mandatory," even when the rule is not jurisdictional. *Id.* at 297 (citation omitted).

We perceive no narrowing of the effect of Section 363(m) other than to clarify that a party can lose the benefit of its terms. There is no issue here of waiver or forfeiture. Thus, compliance with Section 363(m) was "important and mandatory."

It is true that *MOAC Mall* also discussed mootness outside the context of statutory or equitable mootness in bankruptcy by citing the standard that a "case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Id.* at 295 (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (a case involving a convention on international child abduction)). The Court addressed Article III mootness because of the purchaser's separate argument that the transfer of the lease out of the estate rendered the case moot. *Id.* at 294–95. The Court did not resolve that issue because the lower courts had not considered it. *Id.* at 296. The Court vacated and remanded where presumably this mootness issue could be initially considered. *Id.* at 305.

The only mootness issue for us is that which arises under Section 363(m). Nothing in the Supreme Court's discussion of *Chafin* affects that. Indeed, the next sentence in the opinion after saying it would not resolve issues under *Chafin* was this: "With respect to the question that we granted certiorari to consider — whether § 363(m) is a jurisdictional provision — our answer is no, for the reasons that follow." *Id.* at 297. Clearly, the *Chafin* discussion was separate from the Section 363(m) analysis.

Section 363(m) is alive and well and waivable. It was not waived here.

### 2. *Did the district court treat Section 363(m) as jurisdictional?*

Our review of the district court's analysis is that it appropriately treated Section 363(m) as a nonjurisdictional precondition to relief that prevented the Sureties from succeeding on appeal. The district court mentioned "jurisdiction" one time, explaining that it had jurisdiction under 28 U.S.C. § 158(a) to hear an appeal from the bankruptcy court. Instead of using jurisdictional language while discussing Section 363(m), the district court stated that the Sureties' challenges were "statutorily moot" and "moot under section 363(m)." Further, the fact the district court proceeded to consider equitable mootness after finding statutory mootness is evidence that it viewed itself as possessing jurisdiction over the appeal. If a federal court lacks jurisdiction, "the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (citation omitted). Instead of dismissing the appeal after considering Section 363(m), the district court then turned to equitable mootness as an apparent alternative ground.

We now consider whether the application of Section 363(m) was otherwise appropriate.

b.      *Does it matter that the Sureties sought a stay?*

The Sureties emphasize that they sought a stay in the bankruptcy court.  They argue that "because a stay was sought but denied, the absence of a stay order should not invoke the proscriptions of Section 363(m)."  The relevant question, though, is whether a stay was obtained.  *In re Manges*, 29 F.3d 1034, 1040 (5th Cir. 1994).  Focusing on the ruling on the stay motion properly applies the controlling text.  Section 363(m) provides that its restrictions apply "unless such authorization and such sale or lease *were stayed* pending appeal."  11 U.S.C. § 363(m) (emphasis added).  There is no exception within the text for a party who seeks a stay and fails.

The Sureties are correct that we have precedent faulting a party for failing to seek a stay.  *See, e.g.*, *In re Walker Cnty. Hosp. Corp.*, 3 F.4th at 234 (stating that "challenges to authorized bankruptcy sales are dismissed when the party challenging the sale *has not sought* a stay" (emphasis added)).  We do not read the reverse as true, that seeking a stay is enough to preserve a challenge.  "This court's interpretation of § 363(m) — which follows directly from the text of the statute — is clear: '[A] failure to *obtain* a stay is *fatal* to a challenge of a bankruptcy court's authorization of the sale of property.'"  *Id.* (first emphasis added, second in original) (quoting *In re Ginther Trusts*, 238 F.3d 686, 689 (5th Cir. 2001)).

The Sureties' seeking a stay before the bankruptcy court has no bearing on this appeal given the failure to obtain one.

c.      *Were the challenged provisions "integral to the sale"?*

The Sureties argue that Section 363(m) is inapplicable because the challenged provisions stripping them of subrogation rights were not integral to the sale of the Debtors' assets.  We stated already that the failure to obtain a stay is fatal to the challenge of a bankruptcy sale to a good-faith purchaser

on appeal.  That is certainly the ordinary rule.  *See, e.g.*, *In re Walker Cnty. Hosp. Corp.*, 3 F.4th at 234.

Consistent with this analysis, one of our precedents held that the failure to obtain a stay did not moot a case when the bankruptcy court had reserved for later determination whether the sale would be free and clear of a creditor's claims to the property.  *In re Energytec*, 739 F.3d at 217, 220–22.  In that case, a year after the sale occurred, the bankruptcy court concluded that the sale was free and clear of the creditor's interests.  *Id.* at 218.  On appeal, this court rejected the applicability of Section 363(m).  *Id.* at 221.  Because at the time the sale occurred the purchaser could not know if the assets would be free and clear of the claims of others, we reasoned that "'free and clear' was not integral to the sale"; the purchaser had agreed to consummate the sale despite "the risk that [the creditor's] interests would survive."  *Id.* at 220–21.  We summarized this way: "Requiring a stay before we can review a [bankruptcy court's] decision entered a year after a sale that was not originally free and clear of a particular claim does not follow from the text of Section 363(m) nor satisfy its purposes."  *Id.* at 221.

A more recent precedent supports that *Energytec* is confined to situations in which a bankruptcy court specifically reserved an issue for later determination.  *See In re Walker Cnty. Hosp. Corp.*, 3 F.4th at 235 n.5.  There, this court distinguished *Energytec* because in *Walker*, "the bankruptcy court did not reserve any questions for later determination."  *Id.*  Indeed, the continuing strength of Section 363(m) in the usual sale situation is shown by the Supreme Court's recent explanation that the provision "plainly contemplates that appellate courts might 'revers[e] or modif[y]' any covered authorization," but that authority is limited because "the reversal or modification of a covered authorization may not 'affect the validity of a sale or lease under such authorization.'"  *MOAC Mall*, 598 U.S. at 299 (quoting 11 U.S.C. § 363(m) (emphasis removed)).

The case before us did not have the uncertainty at the time of sale that existed in *Energytec* of whether the property would continue to be subject to creditors' claims. The bankruptcy court here provided that the sale of these assets would be free and clear of creditors' claims, explaining that "the deal is unlikely to close if we change it, modify our order, and that the cost would be approximately $350 million to the estate." This was an explicit finding in response to the Sureties' motion for reconsideration or for a stay pending appeal. This court reviews findings of fact for clear error. *In re Walker Cnty. Hosp. Corp.*, 3 F.4th at 233–34.

The Sureties assert that "[t]here is insufficient evidence in the record" to support the finding that the challenged provisions are integral to the sale. The bankruptcy court relied on testimony from Michael Dane, who was the Chief Executive Officer of QuarterNorth Energy LLC, one of the entities formed to purchase assets from the Debtors. He testified that purchasing the assets free and clear of the Sureties' subrogation rights was vital.

The Sureties emphasize that Dane never explicitly stated the sale would not have closed but for the stripping of the Sureties' rights of subrogation. Maybe not, but Dane did testify in equivalent terms. He stated that "purchasing [the] assets free and clear was paramount to [the purchasers'] consideration of how they would be willing to proceed with purchasing [the] assets and contributing capital for all purposes of the plan." Dane stated that "the concept in general of buying the assets free and clear of all liens, claims, encumbrances was what was of paramount importance, including any claims that could come by subrogation." Further, Dane testified that extinguishing subrogation rights was part of what purchasing free and clear meant to the buyers, and that extinguishing those rights was important to the buyers.

No. 23-20104

The bankruptcy court's finding that the sale was "unlikely to close" if the Confirmation Order were altered was plausible in light of the record read as a whole, and therefore was not clearly erroneous. *See In re Ramba, Inc.*, 416 F.3d 394, 402 (5th Cir. 2005). The district court, by extension, did not err in finding that the challenged provisions stripping the Sureties of their subrogation rights were integral to the sale of the Debtors' assets, and that the challenge on appeal was statutorily moot.

AFFIRMED.