# United States Court of Appeals
### For the Eighth Circuit

_____

No. 24-1854
_____

LaDonna Humphrey

*Appellee*

v.

Anthony Christopher; Absolute Pediatric Therapy

*Appellant*s

*U.S. Trustee*

*U.S. Trustee*

------------------------------

National Association of Consumer Bankruptcy Attorneys; National Consumer
Bankruptcy Rights Center

*Amici on Behalf of Appellee(s)*
_____

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville
_____

Submitted: April 15, 2025
Filed: July 29, 2025
_____

Before SMITH, SHEPHERD, and KOBES, Circuit Judges.
_____

SMITH, Circuit Judge.

This appeal requires us to determine whether we may review a bankruptcy court's order approving a proposed sale when the party challenging the sale did not obtain a stay of that sale. We conclude that the absence of a stay renders the case statutorily moot. We therefore vacate the district court's order and dismiss the appeal from the bankruptcy court.

## I. *Background*

This appeal lies at the intersection of several proceedings in both federal and state courts. In May 2018, Absolute Pediatric Therapy (Absolute), a company owned by Anthony Christopher, hired Humphrey but fired her four months later for failure to meet expectations. In October 2018, Absolute and Christopher (collectively, "Appellants") sued Humphrey in Arkansas state court. The lawsuit alleged various tort claims and contended that Humphrey stole information from Appellants and that Humphrey falsely accused Appellants of engaging in fraudulent and unethical business practices. *See Absolute Pediatric Servs. Inc. v. Humphrey*, No. 04CV-18-2961 (Ark. Cir. Ct. Oct. 9, 2018). Humphrey defended against the claims, stating in her answer that her accusations were true. She asserted that Appellants had engaged in Medicaid fraud and hired a convicted felon in violation of certain regulations. She also filed a counterclaim under the False Claims Act, alleging that she was terminated for reporting Appellants' illegal activities.

In the coming year, "the litigation was very contentious," and "[n]umerous cross-motions for contempt and sanctions were filed." R. Doc. 21, at 2. In August 2019, the state court ruled that Humphrey engaged in "active and aggressive spoliation of evidence" and found her "in willful contempt of" prior court orders. Appellants' App. at 176. Specifically, it found that Humphrey "sent spoof e-mails," "destroyed evidence," and falsely claimed that her phone was stolen and her online accounts were hacked. *Id.* As a sanction, the state court struck Humphrey's answer and counterclaim and then immediately found her liable on all nine counts. In

September 2019, the state court held a bench trial on damages and found Humphrey liable to Appellants for $3,570,977.88 plus prejudgment and postjudgment interest. The state court later ordered Humphrey to serve ten days in jail for five instances of contempt. Humphrey appealed.

Following the bench trial, Humphrey filed for Chapter 7 bankruptcy in federal court on September 19, 2019. In December 2019, the Trustee of Humphrey's bankruptcy estate filed a motion for approval of a proposed sale: Absolute offered to pay $12,500 "for the purchase and assignment to them of all claims and potential claims that . . . Humphrey may have that are part of the estate." *Id.* at 33. This included

> Any and all claims including appeals, and specifically Ms. Humphrey's counterclaim of fraud, whistleblower, and violations of the False Claims Act of 31 USC 3730, arising out of or related to the facts and claims in the state court lawsuit, *Absolute Pediatric Services, Inc. d/b/a Absolute Pediatric Therapy and Anthony Christopher v. LaDonna Humphrey, Individually*, in the Circuit Court of Benton County, Arkansas, Case No: 04CV-18-2961; and
>
> . . . Any and all claims including claims asserted or unasserted for slander, false light, defamation, tortious interference with business expectancies, and/or any other intentional tort or related claims against Kenneth Medlin, Anthony Christopher, Absolute, Joe Rocko, Wanda Easch, Felicia Ramos, Linnea Heintz, Heather Johnson, and others as the situation evolves.

*Id.* (space added between paragraphs). Eight days later, Appellants filed an adversary proceeding against Humphrey in the federal bankruptcy court and argued that their $3.5 million state court judgment was nondischargeable under 11 U.S.C. § 523(a)(6). Appellants argued that the debt could not be discharged because Humphrey's willful and malicious conduct injured them given the actions that led to her default. *See In re LaDonna Humphrey*, No. 5:19-ap-07070 (Bankr. W.D. Ark. Dec. 12, 2019).

On December 25, 2019, Humphrey objected to the Trustee's proposed sale but only as it related to "the cause of action for striking the Debtor's answer and for the jury trial on damages." Appellants' App. at 48. The bankruptcy court held a hearing on February 12, 2020. The Trustee testified that there were no other offers and that she had an arms-length discussion when negotiating with Appellants. Appellants' counsel said that they "negotiated [the sale] for about a month and a half" and that Appellants "came up from 7,500 to 12,500 to purchase the assets." *Id.* at 206. Humphrey's counsel reiterated that she was not challenging the sale of her offensive appellate rights (i.e., her counterclaim) but rather the sale of her defensive appellate rights related to the "striking of her answer and . . . the appeal of the denial of a jury trial and damages." *Id.* at 232. She argued that the defensive rights were "personal rights of . . . Humphrey, personal, constitutional, that do not enure to the benefit of the estate or its creditors, but do fundamentally and personally affect Humphrey and her relationship with Absolute, a relationship that Absolute seeks to control utterly, and thereby deprive Humphrey of her fundamental protections." *Id.* at 232–33.

Notwithstanding Humphrey's objection, the bankruptcy court approved the sale of her claims. The court noted that the bar was "pretty low" and found that the sale was not unreasonable because it was the only bid, it "was negotiated at arms length," and Humphrey challenged neither that it was property of the estate nor the price. *Id.* at 239. The bankruptcy court emphasized that Humphrey voluntarily "filed bankruptcy to get rid of . . . a three million dollar debt," so she got "a benefit from filing the bankruptcy." *Id.* at 240. The bankruptcy court noted that it "ha[d not] examined" "the prospect of prevailing on appeal" but that it "look[ed] like [Humphrey] did some things that were maybe not so good." *Id.* It also noted that "generally speaking, appeals are won by the appellee 80 percent of the time," so she was "fighting an uphill battle." *Id.* at 241. It questioned if Humphrey "even [had] money" to appeal and said that the Trustee was "worried about . . . the cost, from a practical standpoint, to have enough money to fund an expensive appeal for which she sees to be problematic, at best." *Id.* Ultimately, the bankruptcy court's holding was that "under the [b]usiness [j]udgment [r]ule, the Trustee . . . made a decision, I

trust the Trustee's opinion, she's competent, she's been around the block, she knows about these things." *Id.* at 245. Again, it noted it was a "low bar," it "[s]ound[ed] like . . . a good deal[,] and there [was] nobody bidding more." *Id.*

Unknown to the bankruptcy court, in early February, one week before the hearing, the State of Arkansas sought "a warrant for . . . Christopher's arrest on charges of Medicaid fraud—the very crime of which . . . Humphrey had been accusing him." *Id.* at 72–73.[1] Later, on March 17, 2020, an Arkansas state court issued the warrant, and Christopher was arrested two days later. He was charged with Medicaid fraud later that year.

On March 18, 2021, Humphrey appealed the bankruptcy court's order approving the sale to the district court. *See* 28 U.S.C. § 158(a)(1). She raised three issues on appeal: (1) whether "[d]efensive appellate rights are . . . property of the [e]state," (2) whether "the Trustee failed to properly determine whether the sale was in the best interest of the estate," and (3) whether Appellants "withheld information relat[ed] to the counterclaim that was purchased and failed to notify the [T]rustee that . . . Christopher was charged with Medicaid fraud." Appellants' App. at 53. On the same date, the Arkansas Court of Appeals entered a stay of the state appeal pending resolution of Humphrey's bankruptcy. *See Humphrey v. Absolute Pediatric Servs., Inc.*, CV-20-33 (Ark. Ct. App. March 18, 2020). Humphrey, however, never requested a stay of the sale in the bankruptcy court. The Trustee and Appellants consummated the sale on February 25, 2020.

On March 31, 2020, the district court entered an order holding the bankruptcy appeal in abeyance pending the resolution of Christopher's prosecution on state criminal charges. Appellants argued that Humphrey's district court appeal was moot under 11 U.S.C. § 363(m) because she did not obtain a stay of the sale. Section 363(m) operates to protect the validity of a sale made to good-faith purchasers. Here,

---

[1]Though Christopher testified at the hearing, no one informed the bankruptcy court of this development, and it is unclear if any of the parties knew. *See id.* at 73.

the district court noted that "if Christopher [was] convicted, it may be difficult to say that his corporate tool, Absolute, purchased any appellate rights in good faith." R. Doc. 10, at 5. In the state criminal proceeding, Christopher moved to dismiss the charges on October 5, 2023, alleging that the State destroyed impeachment material. *See State v. Christopher*, No. 60CR-20-2945 (Ark. Cir. Ct. Oct. 5, 2023). The State opposed the motion to dismiss but eventually dropped the charges, noting personnel changes, stale evidence, and unavailable witnesses.

With the state criminal proceedings concluded, the district court reopened the bankruptcy appeal on November 21, 2023. Ultimately, on March 26, 2024, the district court entered an order reversing the bankruptcy court's order approving the sale. The district court agreed with Humphrey that under Arkansas law, defensive appellate rights are not property of the estate. It noted that in Arkansas, "'personal property' . . . include[s] 'things in action,'" R. Doc. 21, at 7 (quoting *Allen v. Barnett*, 54 S.W.2d 399, 400 (Ark. 1932)), which includes "the right of bringing an action, or a right to recover a debt or money," *id.* (quoting *Bridges v. Shields*, 385 S.W.3d 176, 179 (Ark. 2011)). But this does not include "proceeding in a purely *defensive* posture" because "defending oneself against a lawsuit brought by another party is not 'bringing an action' or attempting to 'recover a debt or money.'" *Id.* at 8 (quoting *Bridges*, 385 S.W.3d at 179). But because Humphrey's estate included both offensive rights and defensive rights, the district court ultimately declined to decide the issue. The court concluded that the distinction was immaterial because, even if they were estate property, "the bankruptcy court clearly abused its discretion in approving their sale to Absolute." *Id.* The district court said that the sale was "obviously no[t]" "fair and equitable [nor] in the best interests of the estate." *Id.* at 9. It noted that Humphrey's attorney would not charge any fees for the state court appeal unless Humphrey recovered assets. The district court reasoned that the $12,500 purchase price for Humphrey's appellate rights was not reasonable because Humphrey lost the opportunity to contest the validity of the $3.5-million debt without legal expense.

-6-

In its order, the district court again rejected Appellants' argument that the appeal was moot under 11 U.S.C. § 363(m). This time, it did not do so on the ground that Absolute was not a good-faith purchaser—in fact, it explicitly declined to address whether the criminal charges against Christopher were relevant to the analysis. Instead, the district court found that the "rule ha[d] no applicability here, because . . . Humphrey in fact *did* obtain a stay satisfying all these concerns: she obtained a stay of the very state-court appellate proceedings that are the subject of this sale." *Id.* at 11. It found that the sale could "easily be undone without prejudice to any party" because nothing had been filed in the state appeal. *Id.* Appellants then filed this appeal seeking reversal of the district court's order that reversed the bankruptcy court's approval of the Trustee's sale of Humphrey's defensive appeal rights. *See* 28 U.S.C. § 158(d)(1).

II. *Discussion*

"As a second reviewing court, we apply the same standards as the district court in our review of the bankruptcy court's order." *First State Bank of Roscoe v. Stabler*, 914 F.3d 1129, 1136 (8th Cir. 2019). "Accordingly, we review the bankruptcy court's legal conclusions de novo and its factual findings for clear error." *In re Apex Oil Co., Inc.*, 406 F.3d 538, 541 (8th Cir. 2005) (emphasis omitted). Appellants argue that (1) defensive appellate rights are estate property under Arkansas law, (2) the bankruptcy court did not abuse its discretion in finding that the sale was in the best interests of the estate, and (3) 11 U.S.C. § 363(m) forecloses appellate review because Humphrey did not stay the sale in the bankruptcy court. Because we agree with the last point, we need not address the first two.

Section 363(m) of the Bankruptcy Code says:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, *unless such authorization and such sale or lease were stayed pending appeal*.

(Emphasis added.) This "finality rule" "protects the reasonable expectations of good faith third-party purchasers by preventing the overturning of a completed sale, absent a stay, and it safeguards the finality of the bankruptcy sale." *In re Trism, Inc.*, 328 F.3d 1003, 1006 (8th Cir. 2003). It "also reflects the inability of courts to supply a remedy once property has left the bankruptcy estate." *Id.* (quoting *In re Rodriquez*, 258 F.3d 757, 759 (8th Cir. 2001) (per curiam)).

We have said that "section 363(m) moots any challenge to an order approving the sale of assets" if: (1) "no party obtained a stay of the sale pending appeal," and (2) "reversing or modifying the authorization to sell would affect the validity of the sale or lease." *Id.* at 1006–07 (footnote and internal quotation marks omitted). The district court said that § 363(m) did not apply because, though Humphrey did not stay the sale, she stayed the underlying state litigation. On appeal, Humphrey adopts the district court's reasoning and argues that her state court stay was sufficient. She does not argue that reversing the order with respect to her defensive appellate rights does not affect the validity of the sale,[2] nor does she argue that Absolute was not a good-faith purchaser. Thus, because we find that Humphrey did not stay the sale as required under the statute, we conclude that the appeal is statutorily moot under § 363(m).

We begin with the plain language of the statute. Section 363(m) says that any "reversal or modification on appeal of an authorization" approving a sale by the

_____

[2]A challenge to a sale "affects the validity of the sale when the [challenged] provision is integral to the sale," meaning that "the provision is so closely linked to the agreement governing the sale that modifying or reversing the provision would adversely alter the parties' bargained-for exchange." *Id.* at 1007. Humphrey's appellate rights were expressly mentioned in Absolute's offer to purchase all claims in Humphrey's estate. *See* Appellants' App. at 33 (proposing the sale of "[a]ny and all claims including appeals . . . arising out of or related to" Absolute's state court action against Humphrey). Thus, the provision approving the sale of the appellate rights is integral to the sale, and reversing that part of the order would affect the validity of the sale.

trustee "does not affect the validity of a sale . . . unless such authorization and such sale . . . were stayed pending appeal." Thus, the statute itself requires that the authorization—the bankruptcy court's order approving the sale—and the sale be stayed pending appeal. Consistent with the statute's language, courts applying § 363(m) require that the sale itself be stayed. *See e.g.*, *In re Trism*, 328 F.3d at 1006 ("The language of section 363(m) moots any challenge to an order approving the sale of assets" if "no party obtained a stay of the sale pending appeal." (footnote omitted)); *In re Jackson*, 663 B.R. 738, 741 (B.A.P. 8th Cir. 2024) ("[A] debtor who fails to obtain a stay of the sale has no remedy on appeal and the appeal is moot." (internal quotation marks omitted)); *In re Stanford*, 17 F.4th 116, 125 (11th Cir. 2021) (finding a case statutorily moot under §363(m) because the seller "failed to stay the sale[] and the sale was completed"). These holdings lead us to conclude that Humphrey was required to stay the sale pending appeal in order to challenge the sale's validity. *See In re Trism*, 328 F.3d at 1006. She failed to do so. Staying the state court litigation did not stay the sale or its authorization by the bankruptcy court. Accordingly, under § 363(m), reversal of the bankruptcy court's order approving the sale would not invalidate the consummated sale.

Humphrey provides no authority to support her assertion that the state court stay is sufficient. She only cites the district court's order, which also cited no authority for this proposition. Instead, she says that she "is unaware of any binding authority holding that a stay from a court other than the bankruptcy court is invalid for the purposes of the finality rule." Appellee's Br. at 21. But the lack of controlling authority on this precise issue does not help Humphrey, especially when the statute's language and binding authority applying § 363(m) requires that the "sale . . . [be] stayed pending appeal." 11 U.S.C. § 363(m); *see also In re Trism*, 328 F.3d at 1006. Further, persuasive authority applying § 363(m) requires that the sale be stayed in the bankruptcy court. *See In re Jackson*, 663 B.R. at 742 (finding an appeal moot because the appellant did not seek a stay of the bankruptcy court's order but rather sought a stay of the sale in the district court on appeal, which the district court denied after the "sale proceeded as planned, effectively denying him the relief he requested").

Humphrey also argues that the state court stay was sufficient because we could still "supply a remedy" given that "the interests of the parties have been preserved." Appellee's Br. at 22. She relies on *In re Rodriquez*, which said that § 363(m) "reflects the inability of courts to supply a remedy once property has left the bankruptcy estate." *See* 258 F.3d at 759. Humphrey's reliance on this statement is misplaced. She argues that a remedy is available because the state court stay kept the parties in the same position as if there had been a stay of the sale. But *Rodriquez* says that courts cannot supply a remedy "once property has left the bankruptcy estate." *Id.* Whatever defensive appellate rights might include, once sold, those rights left Humphrey's bankruptcy estate and went to Absolute. The state court stay had no effect upon the consummated sale in the bankruptcy court.

The National Association of Consumer Bankruptcy Attorneys and the National Consumer Bankruptcy Rights Center, as amici, contend that the district court correctly found that § 363(m) does not bar this appeal because the Supreme Court held that "§ 363(m) is not a jurisdictional provision that would deprive the [c]ourt of the ability to take appropriate corrective action in a case like this." Amici's Br. at 7–8 (citing *MOAC Mall Holdings LLC v. Transform Holdco LLC*, 598 U.S. 288 (2023)). In *MOAC*, the Supreme Court held that § 363(m) is not a jurisdictional provision, which means that it is subject to waiver and forfeiture, because there was no clear statement that the statute limited the court's adjudicatory capacity. 598 U.S. at 297–301. Since *MOAC*, our sister circuits have continued to apply § 363(m). *See e.g.*, *Matter of Fieldwood Energy LLC*, 93 F.4th 817, 823 (5th Cir. 2024) (finding that *MOAC* did not "narrow[] the effect of Section 363(m) other than to clarify that a party can lose the benefit of its terms"). Although § 363(m) is not jurisdictional, it still limits our ability to provide relief when the sale has not been stayed pending appeal. *See In re Stanford*, 17 F.4th at 122 ("[E]ven though courts may retain appellate jurisdiction over appeals from Section 363 authorizations, they are barred by the Code from affording the relief an appellant seeks.").

How can the case be moot if the rule barring appellate review is not jurisdictional? The Seventh Circuit addressed this issue in *Trinity 83 Development, LLC v. ColFin Midwest Funding, LLC*, 917 F.3d 599 (7th Cir. 2019), and found that "§ 363(m) does not concern mootness" because "mootness is a jurisdictional doctrine" and § 363(m) is only a defense. *Id.* at 602. The court compared § 363(m) to "the Norris-LaGuardia Act, 29 U.S.C. § 101, which prohibits the use of injunctions in some labor disputes. When a court concludes that the Act applies, it dismisses the suit but does not declare it moot." *Id.* This tension between jurisdiction and the finality rule informs courts' decisions to refer to § 363(m) as a rule of statutory mootness. "Constitutional mootness is jurisdictional and derives from the case-or-controversy requirement of Article III." *In re Stanford*, 17 F.4th at 121. In contrast, "[s]tatutory mootness is not based on the impossibility or inequity of relief, but the preclusion of relief under a statute." *Id.* at 122. "Because a judicial opinion on the propriety of the transaction would therefore be advisory-only, we consider such appeals statutorily moot." *Id.* (internal quotation marks omitted).

Our characterization of the § 363(m) is not as important as our view of its operation. We hold that it operates to statutorily moot reversal of a non-stayed completed sale. We do note that every other circuit addressing it has referred to § 363(m) as a rule of mootness. *See In re Boy Scouts of Am.*, 137 F.4th 126, 149 (3d Cir. 2025) ("We and our sister circuits have referred to § 363(m)'s bar as statutory mootness since it imposes a constraint on our capacity to fashion relief." (cleaned up)); *Kiviti v. Bhatt*, 80 F.4th 520, 534 (4th Cir. 2023) (saying that Congress "codified some version of mootness for real-property cases" in enacting § 363(m)), *cert. denied*, 144 S. Ct. 2519 (2024); *In re Belkova*, No. 22-13786, 2024 WL 3069143, at *2 (11th Cir. June 20, 2024) (unpublished per curiam) (referring to § 363(m) as a rule of statutory mootness); *In re Ruiz*, 83 F.4th 68, 78 n.6 (1st Cir. 2023) (per curiam) (same); *In re Rich Glob., LLC*, 652 F. App'x 625, 629 (10th Cir. 2016) (unpublished) (same); *In re Clean Air Car Serv. & Parking Branch Two, LLC*, No. 24-1738-BK, 2025 WL 1409862, at *3 (2d Cir. May 15, 2025) (unpublished summary order) (dismissing a case as "statutorily moot pursuant to § 363(m)"); *In re Elieff*, No. 21-56177, 2022 WL 14476315, at *1 (9th Cir. Oct. 25, 2022)

(unpublished mem.) (same); *Matter of Fieldwood Energy*, 93 F.4th at 825 (same); *In re Nashville Sr. Living, LLC*, 620 F.3d 584, 590 (6th Cir. 2010) ("Section 363(m), the statutory mootness provision at issue on this appeal, provides that, absent a stay, a sale to a good faith purchaser under § 363(b) or (c), once consummated, cannot be reversed or modified on appeal."); *In re Hope 7 Monroe St. Ltd. P'ship*, 743 F.3d 867, 872 (D.C. Cir. 2014) ("We have dismissed as moot appeals where the operation of § 363(m) has left us unable to fashion a remedy to address appellants' asserted injury."). We have said that "section 363(m) moots any challenge to an order approving [a] sale" when the sale is not stayed and modification would affect the validity of the sale. *In re Trism*, 328 F.3d at 1006 (footnote omitted); *see also In re Rodriquez*, 258 F.3d at 759. And in a per curiam decision published after *MOAC*, we referred to a panel's previous order granting a party's motion to dismiss under § 363(m) as finding the case "statutorily moot." *See Cornice & Rose Int'l, LLC v. Four Keys, LLC*, 76 F.4th 1116, 1120 (8th Cir. 2023) (per curiam). We hold that in the absence of stay of the sale, Humphrey's appeal of the bankruptcy court's order approving the sale is statutorily moot under § 363(m).

### III. *Conclusion*

Accordingly, the district court erred when it declined to dismiss Humphrey's appeal as statutorily moot under § 363(m). We thus vacate the district court's order and dismiss Humphrey's appeal from the bankruptcy court.

_____